ORA INGRAM AND HER HUSBAND, R. D. INGRAM ET AL. v. JOHN
PLOTT ET AL.

(Filed 31 January, 1928.)

**Trials—Instructions—Applicability to Pleadings and Evidence—Appeal
and Error—Undue Influence.**

In an action based upon undue influence and other issues as to whether
the intestate by deed intended to divide his lands among his sons, and his
personalty among his daughters, charging his sons certain amounts of
money, as evidenced by their notes payable to him, but to be used for the
benefit of his daughters, the matter is one to be determined by the jury
according to the evidence and under proper instructions, and an instruc-
tion that the matter was one of adjustment of the rights of the parties by
the court and jury, etc., and that the notes, being payable to the estate,
would be distributed equally among the sons and daughters, virtually
cutting out the daughters from a share of the estate, and that the jury
were to consider this upon the question of undue influence, when the sons
had waived their rights in the personalty, is reversible error.

APPEAL by defendants from *Stack, J.,* at May Term, 1927, of HAY-
WOOD. New trial.

Action to have certain deeds executed by the father of plaintiffs and
defendants, since deceased, by which lands described therein were con-
veyed to defendants, set aside and declared null and void, for that the
execution of same was procured by fraud and undue influence, and for
other relief.

The issues submitted to the jury were as follows:

"1. Was the execution of the deeds by Montraville Plott to the defend-
ants, on 9 March, 1920, procured by the undue influence of the defend-
ants, or either of them, as alleged in the complaint? Answer: ..........

"2. If not, was it the intention of the said Montraville Plott that the
lands conveyed by said deeds in excess of $2,000 each should be ad-
vancements to the defendants, as alleged in the amended complaint?
Answer: ..........

"3. What was the reasonable market value of the lands conveyed to
defendants on 9 March, 1920, subject to the life estate of the grantors?
Answer: ..........

"4. What was the reasonable market value of the timber on said
lands, which was reserved during the life of Montraville Plott on
9 March, 1920? Answer: ..........

"5. Were said deeds executed upon the understanding and agreement
that the defendants would accept the lands therein conveyed as their
share of the estate of Montraville Plott, and that the plaintiffs should be
paid the notes out of the sale of the timber described in the complaint as
their share thereof? Answer: .. .. ...

"6. If so, was said understanding and agreement entered into with the fraudulent intention on the part of the defendants at the time that the same should never be complied with and performed by them, as alleged in the complaint? Answer: ........."

The jury having answered the first issue "Yes," under the instructions of the court, did not answer the remaining issues. The first issue, with the affirmative answer thereto, was accepted by the court as the verdict.

From judgment on this verdict defendants appealed to the Supreme Court.

*Alley & Alley, Morgan & Ward, M. G. Stamey and Rollins & Smathers for plaintiffs.*

*A. Hall Johnson and Hannah & Hannah for defendants.*

CONNOR, J. Plaintiffs, Ora Ingram, Emma Hyatt, Kowa Medford, Lona Roels and Una Plott, are daughters of Montraville Plott and his wife, Mrs. Julia Plott; all of said plaintiffs are or have been married, except Una Plott. Defendants, John Plott, George Plott, Ellis Plott, Samuel Plott and Vaughn Plott, are their sons. Montraville Plott died on or about 27 November, 1924. He left surviving his widow, Mrs. Julia Plott, and said sons and daughters, as his heirs at law. He died intestate.

On 9 March, 1920, and for many years prior thereto, the said Montraville Plott was the owner and in possession of certain lands situate in Haywood County, North Carolina. On said date the said Montraville Plott and his wife executed three deeds, by which they conveyed to their sons, named in said deeds, respectively, as grantees, the lands described therein. Each of said deeds was filed for registration in the office of the register of deeds of Haywood County, on 21 June, 1920, and was thereafter duly recorded. The consideration recited in each of said deeds, for the conveyance of land described therein to each of said sons, is $4,000, $2,000 of which was an advancement to said sons; each of said sons was required to pay the remaining $2,000 in cash, as evidenced by his note payable to Montraville Plott. A life estate in all of the lands conveyed by said deeds was reserved therein to Montraville Plott and his wife, Julia Plott. The timber on said lands was also reserved to Montraville Plott, for and during his life. These deeds were prepared by an attorney upon instructions given to him by the said Montraville Plott. After they were executed, they were retained in the possession of said attorney, under the instructions of said Montraville Plott, until each grantee had executed the note, evidencing part of the purchase price for the land conveyed to him. The said deeds were then filed for

registration by the said attorney, in accordance with the express instructions of the said Montraville Plott.

There was evidence tending to show that at the time said deeds were executed the said Montraville Plott expressed the opinion that his lands were then worth about $20,000, and that it was his purpose to give his said lands at his death to his five sons, and to give to his five daughters, all of whom, except his daughter Una, were or had been married, the sum of $10,000, this being the total amount of the notes which he required his said sons to execute as part of the consideration for said deeds.

In the original complaint filed in this action plaintiffs alleged "that the execution of each and every one of the foregoing deeds of conveyance was procured through the undue and fraudulent influence and coercion of the said defendants (other than Samuel C. Plott), and that by reason of the aforesaid fraudulent and undue influence and coercion in the execution of said deeds, the same, and each of them became and was fraudulent and void."

They further alleged therein "that the defendants (other than Samuel C. Plott), by fraudulent collusion among the said defendants and the parties to whom the deeds were delivered in escrow, fraudulently, wrongfully and unlawfully procured the possession of the said deeds set out in the next preceding paragraph hereof, and said deeds were wrongfully and unlawfully caused to be put to record as hereinbefore set out, on the records of deeds of Haywood County, and upon the death of the said Montraville Plott the said defendants (other than Samuel C. Plott) wrongfully went into possession of said lands described in their several said deeds, and are now in possession of said lands, claiming title under and through said deeds."

Said allegations are denied in the answer filed by defendants (except Samuel C. Plott and his wife). It is admitted, however, that the male defendants, and each of them, are in the rightful possession of the lands described in their deeds, and have been in such possession since the date of their execution.

In an amendment to the complaint filed by leave of court during the trial, plaintiffs alleged that "said deeds were made with a distinct understanding and agreement that the same should be held in escrow until the notes hereinbefore mentioned should be paid, and the timber so reserved should be sold, and until the proceeds of said notes and timber should be paid to the plaintiffs herein; and that the defendants (other than Samuel C. Plott) at the time said deeds were executed, and prior thereto, and thereafter agreed to abide by the aforesaid division of the said estate, and to accept the lands conveyed by said deeds as their full share of said estate, respectively, and in like manner at the time

aforesaid agreed that said deeds should be held and remain in reserve, and that they should not be delivered to them and placed on record until after the aforesaid notes had been collected and the said timber sold and the proceeds thereof paid to plaintiffs."

In answer to the said amendment to the complaint, the answering defendants say that said amendment "is totally false and untrue in its entirety, and these answering defendants therefore deny the same, and in this connection adopt their former answer in reply to each and every allegation contained in said amended complaint."

In their further answer to the original complaint defendants say:

"That on and prior to 9 March, 1920, Montraville Plott, the father of the *feme* plaintiffs and the male defendants herein, while of considerable age, was hale and hearty, and held and retained his full mental vigor; that at said time and prior thereto it was and had been his intention that his sons, to wit, the male defendants herein, should have, possess and hold all of the real estate of which he was then seized, and that the girl children, to wit, the five plaintiffs herein, should have and receive in lieu of any interest in real estate that he, the said Montraville Plott, may own, the sum of $2,000 each; that the said Montraville Plott as aforesaid was a man of strong mind, and these answering defendants are advised and believe, conceived his own plan of dividing his estate as aforesaid, without the knowledge, consent, request or persuasion of any of the defendants herein, and certainly and most positively without the knowledge, consent, request or persuasion of any of these answering defendants, but pursuant to his own plan employed an attorney at law of high standing and reputation to draw the deeds referred to in the complaint."

Defendants further say in their answer to the original complaint that each of them is ready, able and willing to pay his note, now held by the administrator of their father; that there are no creditors of their father's estate, and that the plaintiffs are and ought to be entitled, in law and equity, to the proceeds of said notes, subject to such interest, if any, as their mother, as widow of Montraville Plott, may have in and to such proceeds.

There are thirty-six assignments of error set out in the record on this appeal. We do not deem it necessary to discuss or to decide whether all of these assignments of error should be sustained or not, in view of our decision with respect to assignment based upon the exceptions to the charge to the jury.

The court charged the jury as follows:

"Gentlemen of the jury, this is an action by certain plaintiffs, the daughters of Mr. Montraville Plott, against the defendants, who are his sons, to adjust the rights of the parties in the property of their father.

That is what you and I, and the lawyers and the officers of the court are trying to do—to ascertain the rights of the parties and adjust them."

Defendants excepted to this instruction, and assign same as error.

The court further charged the jury as follows:

"That is to say, gentlemen of the jury, a man can do with his property whatever he desires to do with it; he can cut out part of his children and give it all to part of them; he can cut out all, if he wishes to, and give the property to a stranger, if that is what he wants to do. Nothing else appearing, the presumption is that every parent intends equality among his children; that they love them all alike, but if a man has sufficient reason and desires to do so, he can dispose of his property, either by will or by deed, as he pleases, regardless of whether it is just or meets with your or my approval."

Defendants excepted to this instruction and assign same as error.

The court further charged the jury as follows:

"You may consider, gentlemen of the jury, that those who were injured had no opportunity to be present and that it was made in their absence. You may consider that the deeds to all the land had the effect to cut out the plaintiffs in the real estate of their father as bearing upon the question of whether he would have made an unequal distribution of his property if he had had the exercise of his own free will. That is a circumstance which you may consider as bearing upon whether or not undue influence was exercised upon Mr. Plott."

Defendants excepted to this instruction and assign same as error.

The court further charged the jury as follows:

"Something has been said about a tender of $2,000 to the plaintiffs in the answer of the defendants, but the tender in the answer is made subject to the right of the administrator and administratrix. The court instructs you that the rights of the administrator and administratrix are that they are the owners of the notes and have the right to recover in full the amount of the notes, the notes not being made payable to the girls, but to the father, and not being paid off in his lifetime, it goes to his legal representatives to enforce payment, and that when collected the proceeds would pass under the statutes of distribution, five-elevenths going to the boys and five-elevenths going to the girls, and one-eleventh to the mother. The court instructs you that that is the way it would be divided. The notes are payable to Montraville Plott, and if not collected in his lifetime they are to be collected by his administrator and administratrix."

Defendants excepted to this instruction and assign same as error.

In view of the allegations in the answers of defendants, and of evidence offered at the trial tending to sustain these allegations, defendants' assignments of error, based upon exceptions to the foregoing instruc-

tions, must be sustained. These instructions were prejudicial to defend-
ants, especially when they are considered in connection with the colloquy
which had taken place during the trial and in the presence of the jury
between the court and counsel for defendants. Defendants excepted to
the questions and comments of the court, tending to show that, in the
opinion of the court, if the first issue should be answered by the jury
"No," plaintiffs would receive no part of their father's estate under the
division made by him, as alleged by defendants. Defendants, in their
answer, as distributees of their father's estate, had ratified this division,
and thereby waived their rights, as such distributees; they could not, of
course, bind their mother, the widow of the deceased, with respect to her
rights. Defendants had also alleged that there were no debts to be paid
by the administrator out of the estate. There was evidence, sustaining
this allegation. Indeed, there was no contention to the contrary. The
intestate died in 1924, and this action was tried in 1927. It was not the
function of the court and jury to adjust the rights of the parties to the
action in the property of their father. It was the duty of the jury to sit
together, hear the evidence pertinent to the several issues submitted to
them, and to render their verdict accordingly. It was the duty of the
court to adjudge the rights of the parties, according to the verdict. The
prejudicial error in the instruction, first excepted to by defendants, was
not cured by the general principles upon which the other instructions
are based. These instructions are not applicable to the facts which the
uncontradicted evidence upon the trial tend to establish.

Defendants earnestly insist that other assignments of error appearing
in the record should be sustained. As we are of the opinion that defend-
ants are entitled to a new trial for the errors in the instructions to the
jury, we do not deem it necessary to pass upon these assignments of
error. For the errors in the charge to the jury, there must be a

New trial.